**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No. CV10-0444 PHX DGC |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| Vistoso Partners, LLC, | ) | |
| Defendant. | ) | |

The parties have filed cross-motions for summary judgment (Docs. 37, 38), and the motions have been fully briefed (Docs. 37-39, 42-47). For the reasons that follow, the Court will grant in part and deny in part both motions.[1]

**I.    Background.**

Although most of the relevant facts appear undisputed, the parties' legal conclusions as to these facts differ. Desert Foothills Water Company ("Desert Foothills") is a wholly-owned subsidiary of Vistoso Partners, LLC ("Vistoso" or "Defendant"). Doc. 39 ¶ 1. In April of 1996, Desert Foothills sold its assets to the Town of Oro Valley for $10.5 million. Doc. 37-1 ¶ 7.[2] Desert Foothills elected to defer the gain for two years for federal tax

---

[1] Defendant's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

[2] The Court will treat Plaintiff's reference to "April 30, 2011" (Doc. 37 ¶ 7) as a scrivener's error and assumes the correct year is 1996.

1  purposes subject to finding a replacement business within this timeframe. Doc. 37-1 ¶ 10.
2  In May of 1996, Desert Foothills transferred the sale proceeds to Vistoso in part for payment
3  of expenses by Vistoso and in part for a loan to Vistoso. Doc. 39 ¶¶ 7, 8, 10; Doc. 37-1 ¶¶
4  11, 14-22. The Court will refer to this transaction as "the Transfer." Vistoso recorded the
5  loan on its books as an account payable. *See* Doc. 39 ¶ 10; Doc. 37-1 ¶ 23-29.

6  Pursuant to a November 6, 2001 Tax Court decision stipulated to by Desert Foothills,
7  the Department of Treasury issued tax assessments against Desert Foothills for years 1996
8  and 1997 totaling over $3.4 million including penalties and interest. Doc. 37-1 at 9:4-17.
9  On December 5, 2006, the Internal Revenue Service ("IRS") filed a Notice of Federal Tax
10 Lien against Desert Foothills with the Arizona Secretary of State. Doc. 37-1 ¶ 41; Doc. 37-
11 49 at 2. On November 28, 2008, the IRS issued and served a Notice of Levy on Vistoso
12 demanding Vistoso pay to the IRS the debt Vistoso owed Desert Foothills, to the extent
13 necessary to cover the latter's tax bill. Doc. 37-1 ¶ 42. Vistoso did not comply, and on
14 January 15, 2009, the IRS issued and served a final demand to Vistoso. Doc. 37-1 ¶ 45-46.
15 On March 1, 2010, the United States filed a complaint initiating this action. Doc. 1. At that
16 time, Desert Foothills's federal tax bill was alleged to be $6,625,813.37. Doc. 37-1 ¶ 48.

17 Plaintiff's complaint asserts four causes of action: (1) failure to honor levy;
18 (2) fraudulent conveyance with respect to the Transfer; (3) disgorgement of proceeds under
19 the trust fund doctrine with respect to the Transfer; (4) and unlawful corporate distribution
20 under A.R.S. § 10-640 with regard to the Transfer. Doc. 1.

21 **II.   Legal Standard.**

22 A party seeking summary judgment "bears the initial responsibility of informing the
23 district court of the basis for its motion, and identifying those portions of [the record] which
24 it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*
25 *Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed
26 in the light most favorable to the nonmoving party, shows "that there is no genuine issue as
27 to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.
28 Civ. P. 56(c)(2). Only disputes over facts that might affect the outcome of the suit will

1  preclude the entry of summary judgment, and the disputed evidence must be "such that a
2  reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*
3  *Inc.*, 477 U.S. 242, 248 (1986).

Local Rule of Civil Procedure 56.1(b) states the following with respect to a non-movant opposing summary judgment:

> Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support. Each numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts must, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts.

Local Rule of Civil Procedure 56.1(e) states the following with respect to legal memoranda in summary judgment motions:

> Memoranda of law filed in support of or in opposition to a motion for summary judgment, including reply memoranda, must include citations to the specific paragraph in the statement of facts that supports assertions made in the memoranda regarding any material fact on which the party relies in support of or in opposition to the motion.

**III.  Discussion.**

Although the Court has reviewed all arguments made in the parties' briefs, it will address only the arguments it found dispositive of the motions. In the ensuing discussion, the Court will use "SOF" in abbreviating the term "Statement of Facts."

**A.  Claim 1 – Failure to Honor Levy.**

**1.  Defendant's Motion.**

Vistoso's motion seeks summary judgment as to all claims (Doc. 38 at 1:18-19), but the motion does not set forth specific arguments as to why Vistoso is entitled to prevail on

- 3 -

Claim 1 (Doc. 47). Accordingly, the motion will be denied as to this claim.[3] *See Celotex*, 477 U.S. at 323 (noting that a movant for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact").

### 2. Plaintiff's Motion.

#### a. Summary of Arguments.

Plaintiff argues that under 26 U.S.C. §§ 6321, 6331, 6332(a) and implementing regulations, the United States had a right to levy Desert Foothills's property, including its receivables. Doc. 37-2 at 3-9. Plaintiff further asserts that Vistoso was obligated to pay to the government any amounts Vistoso owed to Desert Foothills. *Id.* Plaintiff also urges that Vistoso's failure to do so was an unreasonable refusal, making Vistoso subject to a 50% penalty under § 6332(d)(2). *Id.* at 9-11.

Defendant responds that no evidence has been offered regarding Plaintiff's compliance with the notice and service requirements for the levy under § 6331(d)(1)-(2). Doc. 43 at 10. Defendant also contends that the § 6331 notice is deficient by failing to include the information specified in § 6330(a)(3). Doc. 43 at 10. Alternatively, Defendant argues that Desert Foothills had no right to demand accelerated payment of the loan to Vistoso and, by extension, Plaintiff had no right to demand the entire payment via the levy. *Id.* Defendant further urges that it had no cash with which to pay the levy, and that this should constitute a complete defense to the claim or, in the alternative, "reasonable cause" for not paying thereby making the 50% penalty inapplicable. *Id.* at 10-11.

Plaintiff replies that the two Form 4340s issued for tax years 1996 and 1997 constitute sufficient evidence of adequate notice of intent to levy, and argues that Defendant has not offered facts or evidence showing the IRS failed to send timely notice. Doc. 46 at 4-5.

---

[3] To the extent Vistoso's reply seeks to rectify the defect by incorporating arguments made in its response to Plaintiff's motion for summary judgment, the Court will disregard this attempt as untimely. *See, e.g., Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008).

- 4 -

1 Plaintiff further asserts that the levy attached even if Desert Foothills's "right to demand
2 repayment is delayed or restricted," that Vistoso's lack of cash is not a defense as a matter
3 of law, and that Vistoso had assets it could have liquidated to satisfy the levy. *Id.* at 4.

### b.     Notice and Service of Notice.

The Department of Treasury may levy "property of any person with respect to any unpaid tax only after the Secretary has notified such person in writing of his intention to make such levy." 26 U.S.C. § 6331(d)(1). The notice must be served at least 30 days before the levy by one or more the following methods: "(A) given in person, (B) left at the dwelling or usual place of business of such person, or (C) sent by certified or registered mail to such person's last known address." § 6331(d)(1).

In arguing there is no evidence that the contents of Plaintiff's § 6331 notice meet § 6330(a)(3), Plaintiff cites no law for the proposition that a § 6331 notice must contain information other than that specified by § 6331(d)(4). Although notices under § 6330 must contain information specified in § 6330(a)(3), Defendant raises a defect only with respect to the § 6331 notice (Doc. 43 at 10:2-4). Moreover, Defendant does not argue that the § 6331 notice fails to meet the requirements of § 6331(d)(4). Therefore, Defendant's "notice contents" argument is unpersuasive.

With regard to the service requirements of § 6331(d)(2), Plaintiff's SOF asserts that "[o]n November 28, 2008, the Internal Revenue Service issued and served upon Vistoso, a Notice of Levy (Form 668-A) . . . ." Doc. 37-1 ¶ 42. Defendant admits this fact. Doc. 44 ¶ 42. Moreover, Defendant's own summary-judgment SOF, incorporated by reference in its response (Doc. 44 at 1:22-24), appears to agree that "the levy was served on [Vistoso] by the United States [.]" Doc. 39 ¶ 28. Defendant's SOF does not mention or cite evidence that service occurred through means other than those prescribed in § 6331(d)(2) (Docs. 39, 44), and the Court is not obligated to "'scour the record in search of a genuine issue of triable fact.'" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). Rather, the Court relies on "'the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.'" *Id.*

- 5 -

In sum, Defendant fails to support its arguments that the § 6331 notice was deficient and that the service of such notice was deficient. The Court therefore finds the argument unpersuasive.

### c.	**Remaining Arguments.**

The parties agree that the May 1996 Transfer from Desert Foothills to Vistoso was in part a loan to Vistoso. Doc. 39 ¶¶ 7, 8, 10; Doc. 37-1 ¶¶ 11, 14-22. Plaintiff's SOF asserts that "Desert Foothills and Vistoso did not have any written agreement concerning the terms or conditions for repayment of the Transfer" (Doc. 37-1 ¶ 30), an assertion Vistoso admits (Doc. 44 ¶ 30). Vistoso also admits that it had an obligation to Desert Foothills. Doc. 39 at ¶ 28. Plaintiff further asserts that "Vistoso's Balance Sheet for December 31, 2008 reported total assets of $30,919,273" (Doc. 37-1 ¶ 36), which Vistoso admits (Doc. 44 ¶ 36). Vistoso's SOF asserts, however, that it had no funds to pay its obligation to Desert Foothills at the time the levy was served by Plaintiff (Doc. 39 ¶ 28), an assertion Plaintiff does not appear to dispute other than to suggest in its reply that Vistoso should have sold assets to satisfy the levy if cash was unavailable (Doc. 46 at 4:16-19). Plaintiff asserts that "[t]he Notice of Levy requested Vistoso to surrender 'any other money, property, credits, etc. that you have or are already obligated to pay the taxpayer, when you would have paid it if this person asked for payment" (Doc. 37-1 ¶ 42), which Defendant admits (Doc. 44 ¶ 42).

In sum, the parties have placed before the Court the following undisputed facts: Defendant had an outstanding obligation to pay Desert Foothills an amount greater than the latter's debt to the IRS; the obligation was in the form of a loan; the loan had no written repayment terms; the IRS sought to recoup its debt by levying Desert Foothills's rights to repayment from Vistoso; Vistoso declined to pay the IRS; and Vistoso's obligation to pay under the levy as issued was limited to what Vistoso would have paid Desert Foothills upon demand. Neither party addresses whether Vistoso made payments to Desert Foothills on the loan after the IRS issued the levy, or whether sale of Vistoso's assets would have actually resulted in net cashflow. Moreover, Plaintiff does not appear to assert that it attached Vistoso's physical assets such that it had a first-priority lien in case of an asset sale – or even

- 6 -

1  that it had a right to attach Vistoso's assets.[4] The sole asset being attached by the levy
2  appears to be Desert Foothills's receivable – its right to repayment of its loan to Vistoso.

3  The IRS may recover tax debts through judicial lien-foreclosure or an administrative
4  levy. *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985). "[T]he levy
5  does not determine whether the Government's rights to the seized property are superior to
6  those of other claimants; it, however, does protect the Government against diversion or loss
7  while such claims are being resolved." *Id.* at 721. Receivables are assets that can be levied
8  for satisfaction of a tax debt. 26 U.S.C. §§ 6331, 6332, 6334; 26 C.F.R. § 301.6331-1(a)(1);
9  *see Nat'l Bank of Commerce*, 472 U.S. at 719-22.

10  In light of the facts and law stated above, the Court finds that Plaintiff had a right to
11  levy Desert Foothills's right to repayment of its loan to Vistoso. Although it is undisputed
12  that Vistoso did not pay Plaintiff upon demand, Vistoso has raised a genuine factual dispute
13  about whether it would have paid Desert Foothills on demand – and how much – without
14  having funds available. The jury would need to find, at a minimum, whether the unwritten
15  loan terms, either verbal or developed through course of dealing, would have required
16  Vistoso to liquidate assets in light of the absence of cash; whether the liquidation of mostly
17  real-estate related assets would have resulted in net cash for Vistoso after debts secured by
18  the assets, if any, were satisfied; and how much Vistoso was obligated to pay if Desert
19  Foothills had made the same demand as the IRS. Accordingly, the Court will deny summary
20  judgment to Plaintiff on this claim.

21  **B.      Claim 2 – Fraudulent Conveyance.**

22  Defendant's motion for summary judgment argues in part that this claim is time-
23  barred. Doc. 38 at 4:22-24 ("The cause of action entitled 'Second Claim: Fraudulent
24  Conveyance' is barred by law and should be dismissed."). Claim 2 asserts voidance of
25  transfer under both the Federal Debt Collection Procedure Act ("FDCPA") and the Arizona

---

[4] The IRS's filing of a lien against Desert Foothills, which undisputedly occurred, is not relevant to this issue.

1  Fraudulent Transfer Act ("AFTA").  Doc. 1 at 5.

2  Under 28 U.S.C. § 3306, part of the FDCPA, the United States may file a civil action
3  to void fraudulent transfers involving debts to the United States.  Such actions must be
4  brought within 6 years after the transfer was made or the obligation was incurred.
5  § 3306(b)(1)-(2).[5]  Under the AFTA, A.R.S. § 44-1001 et seq., any creditor may file an
6  action to void a fraudulent transfer.  Such actions must be brought within 4 years after the
7  transfer was made or the obligation was incurred.[6]  A.R.S. § 44-1009.

8  Defendant first argues that the FDCPA claim is time-barred (Doc. 38), and Plaintiff
9  acknowledges but does not appear to dispute this argument (Doc. 42 at 5:16-20).  Because
10 it is undisputed that the FDCPA claim was not brought within the applicable statute of
11 limitations, summary judgment will be entered in favor of Defendant on the federal claim.

12 Defendant's motion does not expressly mention the AFTA claim, but does assert that
13 "[t]he cause of action entitled 'Second Claim: Fraudulent Conveyance' is barred by law and
14 should be dismissed."  Doc. 38 at 4:22-24.  Plaintiff appears to interpret this statement as a
15 generalized assertion that the AFTA claim is also time-barred, however, because its response
16 argues that as a sovereign the United States cannot be constrained by AFTA's four-year
17 statute of limitations.  *Id.* at 5.  Defendant appears to disagree, and also replies that the
18 federal government cannot sidestep the federal six-year statute of limitations for voiding a
19 transfer by suing in parallel under state law and claiming exemption from the state statute of
20 limitations.  Doc. 47 at 3.  Defendant cites in support to *FDIC v. Hinkson*, 848 F.2d 432 (3d.
21 Cir. 1988).  Doc. 47 at 3.  The issue of whether the AFTA claim is time-barred is therefore
22 properly before the Court.

23 The Court will first address the case law cited by Plaintiff.  In *Phillips v.*
24 *Commissioner of Internal Revenue*, 283 U.S. 589, 602-03 (1931), the Supreme Court stated

---

[5] Because Plaintiff does not appear to rely on the "discovery theory" (Docs. 37-2, 42), the Court need not decide whether the controlling subparagraph is § 3306(b)(1) or § 3306(b)(2).

[6] Because Plaintiff does not appear to rely on the "discovery theory" (Docs. 37-2, 42), the Court need not address the extended statute of limitations.

1  that "[t]he United States is not bound by state statutes of limitation unless Congress provides
2  that it shall be." The Court reaffirmed this position in *United States v. Summerlin*, noting that
3  "the United States is not bound by state statutes of limitation or subject to the defense of
4  laches in enforcing its rights." 310 U.S. 414, 416 (1940). Plaintiff reads these statements
5  out of context, however.

6        *Phillips* involved the collection of a defunct corporation's tax from a 25% shareholder
7  under a federal statute. 283 U.S. at 592. One argument before the Supreme Court was that
8  Pennsylvania law had a statute of limitations that precluded suits against shareholders, and
9  the Court held essentially that the state limitation was preempted by federal law. *Id.* at 602-
10 03. Applying *Phillips* to this case would mean that the federal six-year statute of limitations
11 preempts AFTA's four-year period. Because Plaintiff's federal claim is barred under the six-
12 year statute, however, *Phillips* is of no assistance to Plaintiff.

13       In *Summerlin*, the United States obtained a claim against a decedent's estate through
14 an assignment. 310 U.S. at 414. The administratix of the estate noticed all creditors to file
15 proof of their claims within 8 months, as required by state law. *Id.* at 415. The United States
16 filed its proof of claim after this deadline, and the county probate judge disallowed the claim
17 as untimely. *Id.* The state law in question extinguished valid claims if the demand for
18 payment was not made within eight months. *Id.* at 415-16. The Supreme Court noted that
19 the claim once assigned became a valid claim of the United States under the National
20 Housing Act, and held essentially that state law could not extinguish this claim merely
21 because the proof-of-claim was not submitted within the time provided by state law. *Id.* The
22 rationale appears, again, rooted in the preemptive power of federal law. *See id.* at 417
23 ("When the United States becomes entitled to a claim, acting in its governmental capacity
24 and asserts its claim in that right, it cannot be deemed to have abdicated its governmental
25 authority so as to become subject to a state statute putting a time limit upon enforcement.").
26 *Summerlin* is inapposite here. The United States did not purchase or receive a claim that was
27 subsequently extinguished by state law. Moreover, for the same reasons as discussed above
28 with respect to *Phillips*, preemption generally does not favor Plaintiff because although

1  federal fraudulent-transfer law preempts Arizona fraudulent-transfer law, Plaintiff's claim
2  here is time-barred under federal law, not state law.

3  The Court now turns to the out-of-jurisdiction district cases cited by Plaintiff. In
4  *United States v. Bantau*, the court first found that the collection action was governed by the
5  statute of limitations under the Internal Revenue Code ("IRC") rather than the FDCPA, and
6  that the collection claim was timely under the IRC. 907 F. Supp. 988, 990 (N.D. Tex. 1995).
7  The court went on to address the issue of whether "the government's claims of transferee
8  liability in equity are barred by the extinguishment provisions found in the Texas laws upon
9  which the government relies," and held that "the United States may bring an action pursuant
10 to state law without reference to state law limitation periods." *Id.* at 991. Although the court
11 relied on *Summerlin*, its analysis was perfunctory and made no mention of *Summerlin's*
12 preemption posture. To the extent *Bantau*'s analysis would find *Summerlin* applicable in this
13 case, it is at odds with this Court's interpretation of *Summerlin* and is therefore not
14 persuasive. Also, to the extent the IRC preempted the state statute of limitations in *Bantau*,
15 Plaintiff does not make an IRC preemption argument here. IRC preemption was also the
16 operative rationale in *United States v. Carney*, a case cited but not argued by Plaintiff here.
17 796 F. Supp. 700, 703-04 (E.D.N.Y. 1995) ("Since the government is proceeding under State
18 law, the government is not bound by the applicable State statute of limitations. . . . In this
19 action, the government is bound by the statute of limitations contained in the Internal
20 Revenue Code, 26 U.S.C. § 6502(a)(1), which states that an action to collect taxes must be
21 commenced within 6 years after assessment of the tax.").

22 The Court now turns to the one case cited by Defendant: *FDIC v. Hinkson*, 848 F.2d
23 432 (3d Cir. 1988). *Hinkson* involved a federal statute that set a six-year limitation in actions
24 for money damages while the applicable state statute for similar actions was twenty years.
25 *Id.* at 432-33. The United States filed suit for money damages more than six years but less
26 than twenty years after the cause of action accrued. *Id.* at 435. The Third Circuit held that
27 the federal statute barred the government's claim despite the longer state statute of limitations
28 for the same cause of action. *Id.* at 434-35. The court found *Summerlin* inapposite because

- 10 -

the extinguishment of the claim in *Hinkson* effected by the federal statute, not the state statute. *Id.* at 433. The court also observed that "[i]f the state statute of limitations has expired before the government acquires a claim, it is not revived by transfer to a federal agency," and that under Supreme Court precedent in *Guaranty Trust Co. v. United States*, 304 U.S. 126, 142 (1938), "the federal government suffers no deprivation in such a circumstance." *Hinkson*, 848 F.2d at 434. Although *Hinkson* is not completely on all fours with this case in light of the fact that voiding the Transfer is not a claim acquired by the United States, it persuades this Court that where federal and state statutes of limitations cover the same action, the federal statute governs.

In sum, to the extent Plaintiff attempts to defend the timeliness of its AFTA claim solely by arguing that it is subject to no statute of limitations whatsoever, its argument is not adequately supported by law. Because Plaintiff does not identify a federal statute that preempts the AFTA statute of limitations to save the AFTA claim, and because Plaintiff's federal claim under FDCPA is time-barred, summary judgment must be entered in favor of Defendant on this claim on statute-of-limitations grounds.

### C.   Claim 3 – Trust Fund Doctrine.[7]

Defendant's motion seeks summary judgment as to all claims (Doc. 38 at 1:18-19), but neither the motion nor reply set forth specific arguments as to why Vistoso is entitled to prevail on Claim 3. The Court will therefore deny Defendant's motion as to this claim. *See Celotex*, 477 U.S. at 323.

### D.   Claim 4 – Unlawful Corporate Distribution.[8]

Defendant seeks summary judgment on this claim, arguing that the Transfer was not a distribution to shareholders in violation of A.R.S. § 10-640. Doc. 38 at 12. Plaintiff does not oppose. Doc. 42 at 2 n.1. The Court will therefore grant judgment in favor of Defendant on this claim.

---

[7] Plaintiff does not seek summary judgment on this claim. Doc. 37 at 1 n.1.

[8] Plaintiff does not seek summary judgment on this claim. Doc. 37 at 1 n.1.

**IT IS ORDERED:**

1. Plaintiff's partial motion for summary judgment (Doc. 37) is **granted in part and denied in part** as stated above.

2. Defendant's motion for summary judgment (Doc. 38) is **granted in part and denied in part** as stated above.

3. The Court will set a final pretrial conference by separate order.

DATED this 6th day of June, 2011.

*David G. Campbell*
United States District Judge