**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-10-444-PHX-GMS |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | |
| Vistoso Partners, LLC, | |
| Defendant. | |

Pursuant to the stipulation of the parties, the Court held a non-jury trial on the Plaintiff's Complaint on December 13, 2011. Pursuant to Federal Rule of Civil Procedure 52, the Court hereby makes its findings of fact and conclusions of law.

**FINDINGS OF FACT**

1. Defendant Vistoso Partners, LLC is an Arizona Limited Liability Company that was formed in 1993 to purchase a large piece of property, commonly referred to as Rancho Vistoso, located in Oro Valley, Arizona. Vistoso developed this piece of property into a master planned community.

2. The taxpayer, Desert Foothills Water Company, was initially incorporated in the State of Arizona as Rancho Vistoso Water Company in 1979. The company changed its name to Desert Foothills in 2001. Desert Foothills functioned as a water utility and provided service to the Rancho Vistoso Master Plan.

3. Vistoso is the sole shareholder of Desert Foothills.

4. Conley Wolfswinkel is a consultant for both Vistoso and Desert Foothills. He was responsible for raising money to fund the Rancho Vistoso development and making financial decisions for both entities.

5. Judy Windisch has been a certified public accountant since 1980 and has been providing accounting services and accounting oversight of the business enterprises commonly referred to as "W Holdings," which include Vistoso and Desert Foothills, since 1982.

6. W Holdings routinely transfer money from one business enterprise to another as needed, resulting in a receivable on the books of the transferor and a payable on the books of the transferee.

7. The decisions to transfer money between the W Holdings enterprises are primarily made by Conley Wolfswinkel.

8. On February 16, 1996, Desert Foothills entered into an asset purchase agreement with the Town of Oro Valley to sell all of its assets for $10,500,000. The sale closed on April 30, 1996, and Desert Foothills received net proceeds of $9,281,561.21.

9. The Sale of Assets to the Town of Oro Valley triggered a capital gain for Desert Foothills for the tax year ending January 31, 1997. Desert Foothills elected to defer recognition of the capital gain for two years pursuant to 26 U.S.C. § 1033 on its 1996 Form 1120 U.S. Corporate Income Tax return.

10. In May 1996, Desert Foothills transferred $9,115,000.00 (the "Transfer") of the funds it received in the sale of its assets to its sole-shareholder Vistoso. Vistoso subsequently paid $2,984,611.95 of this amount to various parties to settle liabilities related to Desert Foothills' Line Extension Agreements.

11. After the sale, Desert Foothills became inactive, incurring only minimal expenses.

12. The decision to make the Transfer from Desert Foothills to Vistoso was made primarily by Conley Wolfswinkel.

13. The Transfer was made via an open advance account between Desert Foothills

and Vistoso, thereby creating a receivable on the books of Desert Foothillls from Vistoso.

14. For tax year 1996, Desert Foothills included the Transfer as part of a $7,005,445 "Loan to Shareholders" under Schedule L, Line 6 on its form 1120 U.S. Corporation Income Tax Return.

15. Vistoso has consistently reported the Transfer as an account payable on its balance sheet since 1996.

16. Desert Foothills and Vistoso did not have any written agreement concerning the terms or conditions for repayment of the Transfer.

17. The Transfer was not secured by any collateral and had no conditions or terms for how it was to be repaid or the manner in which it was to be repaid.

18. At no time has Desert Foothills or Rancho Vistoso Water Company ever demanded repayment of the Transfer.

19. Since 1996, Vistoso has transferred small amounts back to Desert Foothills to pay various expenses incurred by Desert Foothills. These expenses include: Desert Foothills' annual corporation commission filing fee, a $50 state income tax fee, and miscellaneous accounting or legal expenses. When these amounts were repaid, Vistoso reduced the payable on its balance sheet accordingly.

20. On November 6, 2001, Desert Foothills entered into a stipulated decision in the United States Tax Court that it owed deficiencies in federal income tax for the taxable years ending January 31, 1996 and January 31, 1997 in the amounts of $121,806 and $1,817,508 respectively.

21. As a result of the stipulated Tax Court Decision, a duly authorized delegate of the Secretary of Treasury made federal income tax assessments against Desert Foothills for its 1996 and 1997 taxes.

22. On November 17, 2006, the Internal Revenue Service sent Desert Foothills a letter entitled "Final Notice: Notice of Intent to Levy and Notice of Your Right to a Hearing."

23. On November 20, 2006, a Notice of Federal Tax Lien relating to the tax

assessments against Desert Foothills was filed and recorded with the Secretary of State's Office in Phoenix, Arizona.

24. On November 28, 2008, the Internal Revenue Service issued and served upon Vistoso a Notice of Levy (Form 668-A) notifying it that Desert Foothills owed over $5 million in unpaid taxes, interest, and penalties, and that Vistoso was required to surrender to the IRS any "property or rights to property *(such as money, credits and bank deposits)* that you have or which you are already obligated to pay" Desert Foothills. The Notice of Levy also instructed Vistoso that if it did not owe any money to Desert Foothills, it was to complete "the back of Part 3" of the levy document and mail that part back to the IRS. The back of Part 3 instructed Vistoso to state the next date upon which it would owe funds to Desert Foothills and any "[o]ther information you believe may help us."

25. S. Ross, who worked as a receptionist for Vistoso, signed for receipt of the Notice of Levy.

26. At the time the Notice of Levy was served, Desert Foothills owed $5,772,393.10 in tax, penalties, and interest for its 1996 and 1997 tax liabilities.

27. At the time the Notice of Levy was served, Vistoso had the account payable to Desert Foothills listed on its balance sheet. The account payable to Desert Foothills was only reported as $4,271,021 on Vistoso's balance sheet for the period ending December 31, 2008. This amount, however, reflects the net of the payable to Desert Foothills, Vistoso's $2,715,324 basis in Desert Foothills' stock, and small expenses Vistoso paid on Desert Foothills' behalf. The account payable to Desert Foothills was also reported on Vistoso's Consolidated Balance Sheet for the period ending December 31, 2009, as part of a consolidated receivable/payable entry in the amount of $6,986,013.

28. At the time the Notice of Levy was served, Desert Foothills reported the Transfer as an account receivable on its books. On its tax return for the tax year ending January 31, 2008, Desert Foothills reported the Transfer as part of a $6,990,898 "Loan to Shareholders" under Schedule L, Line 6.

29. As of December 31, 2008, Vistoso's balance sheet reported total outstanding

1 secured debts of $37,764,617 and total assets of $30,919,273.

2     30. On January 15, 2009, the Internal Revenue Service issued and served upon Vistoso a Final Demand for Payment (Form 668-C). This Final Demand instructed Vistoso that "[i]f you don't pay within 5 days, we will consider you to have refused our demand and we may then enforce Code Section 6332."

    31. Autumn Ahland, who at the time was an assistant to Judy Windisch, signed for receipt of the Final Demand.

    32. Vistoso did not respond to Notice of Levy or Final Demand for Payment.

    33. Vistoso's main assets are land holdings. During the time period of November 2008 through January 2009, Vistoso owned a 5.7 acre parcel of property free and clear of any liens. Vistoso's other land holdings were encumbered.

    34. As of December 31, 2008, Vistoso had on hand $142,375 of unrestricted cash.

    35. In 2008, Vistoso paid $8,568,752 in cash for general and administrative expenses.

    36. In 2009, Vistoso paid $1,020,190 in cash for general and administrative expenses.

## CONCLUSIONS OF LAW

    1. Plaintiff brings two causes of action. First, Plaintiff claims that Defendant Vistoso is liable under 26 U.S.C. § 6332(d)(1) (2006) for failure to honor a levy. Second, Plaintiff claims that Defendant is liable under 26 U.S.C. § 6332(d)(2) for failure to honor a levy "without reasonable cause" for such failure.

    2. Under 26 U.S.C. § 6332(d)(1), an entity which fails to comply with a levy upon demand by the IRS becomes personally liable to the U.S.:

> Any person who fails or refuses to surrender any property *or rights to property,* subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, . . . together with costs and interest on such sum. 26 U.S.C. § 6332(d)(1) (emphasis added).

    3. As the Court held in its June 6, 2011 Order, when Plaintiff levied Desert

Foothills' account receivable it acquired Desert Foothills' right to repayment from Defendant. (Doc. 48 at 7). Defendant's debt to Desert Foothills, however, was greater than the $5,772,393 Desert Foothills owed Plaintiff. Therefore Defendant's liability to Plaintiff under § 6332(d)(1) is capped at $5,772,393 plus any additional "costs and interest on such sum."

4. Defendant contends that Plaintiff's right to repayment has not yet matured because there were no terms or conditions of repayment for the loan. Where there is no due date on a loan, however, a debtor is obligated to immediately pay back the full amount of the debt upon the lender's demand. *See Matter of Estate of Musgrove*, 144 Ariz. 168, 171, 696 P.2d 720, 723 (App. 1985) (adopting the "majority position" that where an oral loan agreement is silent as to time of repayment, the loan is "repayable upon demand"); *In re Bell & Beckwith*, 50 B.R. 419, 421–22 (Bk. Ohio 1985) (holding that an oral loan agreement with no due date is payable on demand because otherwise a debtor "could interminably forestall ever having to satisfy [its] obligation"). Plaintiff therefore had the right to immediately collect the account receivable it levied.

5. Defendant also contends that the applicable "value" of Plaintiff's right to repayment is the amount Defendant would have been able to pay Plaintiff at the time Plaintiff issued the Notice of Levy. To support this argument, Defendant cites *U.S. v. Bailey,* a First Circuit case. 707 F.2d 19 (1st Cir. 1983). In *Bailey*, the defendant failed to release stock certificates on which the government had issued a tax levy. *Bailey*, 707 F.2d at 21. At the time of the ensuing litigation, those stock certificates were worthless. *Id.* The court held, however, that the defendant was liable to the government for the "value" of the stock as of the time the levy was issued. *Id.* at 22. Unlike the parties in *Bailey*, however, the Parties in this case do not dispute the book value of the taxpayer's property at the time of levy; both Defendant and Plaintiff agree that the amount Defendant owed Desert Foothills was greater than the levied amount. Whether or not Defendant would have been able to pay that amount upon demand by Desert Foothills is not a matter or liability, but of collectibility.

6. In sum, by failing to respond to either the Notice of Levy or Demand Letter and

surrender payment on the loan, Defendant failed to surrender rights to property. Defendant is therefore liable "in [its] own person and estate to the United States in a sum equal to the value of the . . . rights not so surrendered." 26 U.S.C. § 6332(d)(1). In other words, Defendant is liable to Plaintiff for $5,772,393 plus any additional "costs and interest on such sum." *Id.*

7. In its post-trial memorandum, Defendant argues for the first time that any claim on Defendant's outstanding debt is barred by A.R.S. § 12-543's statute of limitations. (Doc. 84 at 4–5). A.R.S. § 12-543 states that "[f]or debt where the indebtedness is not evidenced by a contract in writing," an action "shall be commenced and prosecuted within three years after the cause of action accrues." The Arizona Court of Appeals ruled in *Matter of Musgrove* that where an oral contract "is silent as to time of repayment, a cause of action accrues at the time the contract is made." 144 Ariz. 168, 171, 696 P.2d 720, 723 (App. 1985). Accordingly, if the Court were to apply the *Musgrove* rule, Desert Foothills' cause of action accrued in May 1996—the time the loan was made. The limitation period therefore would have expired in May 1999. *See id*. Arizona Revised Statutes § 12-508 states, however, that an "acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the action out of the operation of the [limitations period]" where such acknowledgment is "in writing and signed." Defendant has made numerous signed, written statements during the course of this action in which it acknowledges the existence and validity of its debt to Desert Foothills. For example, Defendant has stipulated that "[f]rom the date of the transfer to the present and throughout the intervening years" it has "continuously and consistently reported the transfer as an outstanding obligation." (Doc. 39 at ¶ 30). Moreover, Defendant has stipulated that it continued to treat the transfer as a subsisting debt even after Plaintiff brought suit against Defendant. (Doc. 56 at ¶ 29). Indeed, Defendant's position throughout the proceedings of this case has been "[w]e owe the taxpayer" but are not liable because the debt is "not yet due." (Doc. 72 at 4; *see also* Doc. 39 at ¶ 28, Doc. 78 at 8). Defendant has further acknowledged that "[d]enying the obligation would set [Defendant] up for . . . possible tax fraud or perjury."

(Doc. 72 at 4).

8. These statements and stipulations, taken together, constitute "acknowledgment of the justness of [Desert Foothills'] claim." *See* A.R.S. § 12-508. As the Arizona Supreme Court has stated, acknowledgment of debt can be legally sufficient to toll the statute of limitations even where a defendant does not expressly promise to repay its debt:

> Although a defendant has not expressly promised to repay the indebtedness, where an acknowledgment discloses that the writer treats the indebtedness as subsisting and contains an expression of willingness to pay, as well as directly or impliedly an expression by the writer that a moral obligation rests upon him to pay the original debt, the acknowledgment will be sufficient . . . as to the justness of the claim.

*Freeman v. Wilson*, 107 Ariz. 271, 276, 485 P.2d 1161, 1166 (1971). Defendant clearly "treats the indebtedness as subsisting" as evidenced by its statement that it has "continuously and consistently reported the transfer as an outstanding obligation." (Doc. 39 at ¶ 30; *see also* Docs. 37-1 at 32; 44 at 32). Moreover, the Defendant's classification of the debt in the stipulations of fact as an "outstanding obligation" sufficiently expresses both its willingness to pay the debt once it has matured and the moral obligation to do so. (Doc. 39 at ¶¶ 28, 30). Defendant's acknowledgments of the debt, taken together, are therefore sufficient to constitute an acknowledgment of the justness of Plaintiff's claim.

9. Finally, even if Defendant's statements did not constitute a legally enforceable acknowledgment, the unique facts in this case evidence an abuse of corporate formalities based on which Defendant should be required to repay its debt to Desert Foothills upon the government's request. *See cf. Sea-Land Services, Inc. v. Pepper Source*, 993 F.2d 1309, 1311–12 (7th Cir. 1993) (holding that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice" where "a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful") (citing *Sea-Land Services, Inc. v. Pepper Source*, 941 F.2d 519, 524 (7th Cir. 1991)). As stated, the court in *Musgrove* determined that the limitation period for oral loan agreements with no due date begins to

accrue "at the time the contract is made." 144 Ariz. at 171. The court also stated, however, that "[t]he rationale for this rule is to prevent a creditor from extending the limitations period by failing to make a demand." *Id.* This rationale does not exist in situations like that in the instant case where the debtor owns the creditor and the debtor's repayment of loan funds would go straight to the creditor's outstanding tax obligations. In such a situation, the creditor has every incentive to extinguish the debtor's liability, and a three-year limitations period would encourage, rather than prevent a creditor from demanding payment. In short, accrual from the time a contract is made is the appropriate rule for situations like that in *Musgrove* where the debtor and creditor do not share some the same financial interests. *See* 144 Ariz. at 171. Were the Court to apply the same three-year accrual rule to loans between parents and their subsidiaries, however, no self-interested subsidiary which owes taxes and lacks assets would ever require repayment from its parent.

  10. Under 26 U.S.C. § 6332(d)(2), an entity which fails to honor a levy "without reasonable cause" for such failure is subject to an additional 50 percent penalty:

> In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). 26 U.S.C. § 6332(d)(2).

  11. Under the tax code, the United States has the burden of "production" with respect to the liability of any individual for any penalty. 26 U.S.C. § 7491(c) (2006). In other words, the United States "must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty." *Higbee v. Comm'r*, 116 T.C. 438, 446 (2001). Given the legislative history of the tax code, however, the United States "need not introduce evidence regarding reasonable cause . . . [as] the taxpayer bears the burden of proof with regard to [this] issu[e]." *Id.* ("Congress did not desire that the burden of *proof* be placed on the Commissioner with regard to penalties.") (emphasis added). By virtue of the Parties' stipulations and the Court's holding that Defendant violated § 6332(d)(1), Plaintiff has met its burden of production with respect to § 6332(d)(2). Defendant therefore has the burden of

proof that it had reasonable cause for its failure to surrender payment to Plaintiff.

12. The Treasury Department regulations regarding § 6332(d)(2) state that reasonable cause exists where there is a bona fide dispute over: 1) "the amount of property to be surrendered," or 2) "the legal effectiveness of the levy." 26 CFR § 301.6332-1(b)(2). *See also U.S. v. Donahue Indus. Inc.*, 905 F.2d 1325, 1331 (9th Cir. 1990) (recognizing the same two grounds for reasonable cause). Defendant does not dispute the legal effectiveness of the levy. As stated, however, Defendant disputes whether the debt is immediately due upon demand, which is in essence a dispute over the amount of property it must surrender to Plaintiff. Therefore, whether Defendant had reasonable cause for its failure to surrender the loan amount turns on whether its dispute over the "payable on demand" nature of the loan is a bona fide legal dispute. In the Ninth Circuit, a bona fide legal dispute exists where there is an "unsettled question of law." *Donahue Indust., Inc.*, 905 F.2d at 1332 (citing *United States v. Sterling Nat'l Bank*, 494 F.2d 919, 923 (2d Cir. 1974)). There is no such unsettled question of law in this case. As stated, in Arizona a loan is payable on demand in the absence of a specific due date. *Musgrove*, 144 Ariz. at 171. Defendant cites *Hamad v. Zhili*, 2010 WL 2352051 (Cal. App. 2010), as authority to the contrary. That case, however, was not decided under Arizona law. Defendant has not, therefore, established the existence of a bona fide legal dispute over the amount of property to be surrendered. *See cf. Sterling*, 494 F.2d at 923 (holding that a bona fide legal dispute existed where "*there were cases within this circuit* that supported the [defendant's] position") (emphasis added). Although Defendant now makes the perfunctory, eleventh-hour claim that its debt to Desert Foothills has been extinguished by the statute of limitations, Defendant has never argued—much less provided evidence—that its failure to honor the levy was due to its reliance on the statute of limitations issue. To the contrary, Defendant's position throughout this action has been that it could not be required to "pay a debt not yet due with money it did not have." (Doc. 72 at 4). In short, Defendant does not argue that it failed to honor Plaintiff's levy due to the statute of limitations issue. The Court need not determine, therefore, whether the limitations issue was a bona fide legal issue.

1        13.       Defendant also claims that its failure to comply with the levy was the result of negligence by its lower-level employees, and that this negligence provides reasonable cause for Defendant's failure to comply. Defendant contends that there was a high volume of mail coming into its office and that the receptionists who signed for the Notice of Levy and the Demand Letter simply failed to understand the importance of these documents and therefore failed to give them to management. Courts, however, have routinely rejected defendants' attempts to characterize employee misconduct in handling notices of levy as reasonable cause. *See, e.g.*, *United States v. MPM Fin. Group, Inc.,* 215 Fed. Appx. 476, 478 (6th Cir. 2007) ("[Defendant's] lack of internal controls cannot amount to reasonable cause for failing to honor the levy."); *U.S. v. Heli USA Airways, Inc*., 2011 WL 5554277, at *4 (D. Nev. Nov. 14, 2011) (rejecting the defendant's argument that "[employee] incompetence provides 'reasonable cause' for failure to comply with the levy"). Moreover, Autumn Ahland, who signed for the Demand Letter, was at the time the assistant to Ms. Judy Windisch, Defendant's in-house accountant. As the assistant to one of Vistoso's key financial officers, Ms. Ahland would have understood the importance of forwarding this document to management.

        14.       Defendant also claims that reasonable cause existed because it was "unable to pay" the amount demanded by Plaintiff in the levy documents. The Defendant has not provided, however, nor has the Court been able to find, any authority for the proposition that an inability to pay constitutes reasonable cause. And even if the Court were to recognize this defense, Defendant has failed to establish that it was unable to pay at least a portion of the demanded debt. As of December 31, 2008, Defendant had $142,375 of cash on hand. Moreover, during 2008 Defendant spent $8,568,752 in cash to cover various general and administrative expenses. In 2009, Defendant spent an additional $1,020,190 in cash on such expenses. Defendant has not shown why it would have been unable to use some of this cash to pay off a portion of its obligation to Plaintiff under the levy. Moreover, Defendant could have generated additional funds by selling its 5.7 acres of unencumbered property. Yet Defendant made no attempt to do so. Any inability Defendant may have had to satisfy the full

amount of the levy did not excuse Defendant from surrendering the funds which it had available.

15. In sum, Defendant has failed to establish a bona fide dispute over the amount of property to be surrendered or the legal effectiveness of the levy. Defendant has also failed to establish other grounds which might constitute reasonable cause. Defendant is therefore liable for § 6332(d)(2)'s 50 percent penalty.

16. Any conclusion of law deemed a finding of fact is so adopted.

## CONCLUSION

For the reasons stated above, the Court finds in favor of Plaintiff and will enter judgment in its favor. Plaintiff is ordered to submit a proposed final judgment by **January 17, 2012**.

DATED this 3rd day of January, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge